# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA,**
        **Plaintiff,**

    v.                                                                           **Case No. 14-CR-201**

**JAMAAL EDWARDS**
        **Defendant.**

## DECISION AND ORDER

The government charged defendant Jamaal Edwards with possessing firearms as a felon, possessing an unregistered short-barreled shotgun, and possessing heroin with intent to distribute. Defendant filed a motion to suppress evidence seized from his home, arguing that the police entered without legal justification. The magistrate judge handling pre-trial proceedings in this case held an evidentiary hearing, then recommended that the motion be denied.

Defendant objects to the recommendation. My review is de novo. Fed. R. Crim. P. 59(b). De novo review does not require a de novo evidentiary hearing, even when witness credibility is at issue. See United States v. Raddatz, 447 U.S. 667, 673-76 (1980). I find the record made before the magistrate judge sufficient to rule. I now adopt the recommendation and deny the motion.

## I. FACTS AND BACKGROUND

On August 18, 2014, police responded to a homicide near North 47th and West Center Streets in Milwaukee. Witnesses advised that two individuals involved in the shooting ran to a residence down the block on 47th Street, and officers went to that location, encountering

defendant and his friend Dave Reel outside the residence. Defendant and Reel matched the description of the two individuals identified by the witnesses.

Prior to his arrival at the residence, Detective Todd Fischer, the lead investigator, reviewed surveillance footage from a nearby store, which captured the shooting. The video showed defendant and Reel speaking to the victim; a third man then came up and shot the victim at point blank range. Defendant and Reel walked away. The shooter walked off in a different direction.

Fischer traveled to the residence on 47th Street and asked defendant if he saw the shooter and could he explain why neighbors were saying he was the perpetrator. Defendant falsely claimed that he wasn't there and didn't know what Fischer was talking about. Reel also falsely denied seeing anything outside the store. Fischer asked defendant if anyone else was in the house. At that point, defendant's wife, Talana Johnson,[1] interrupted, stating, "My babies are in the house. Get my babies out of the house." (Evid. Hr'g Tr. at 18.) Fischer asked Johnson for consent to enter the house and sent another officer to get a consent form. The officer failed to promptly return, and given the urgency of the situation Fischer asked Johnson if he could send in his tactical team to the get the kids out. Johnson responded, "Yes, get my children out of the house." (Tr. at 21.) Fischer also advised Johnson that neighbors stated the shooter ran into her house. Johnson said, "My children are in that house, could you please get my children out." (Tr. at 23.)

As the officers began to enter, defendant said "wait, wait, wait." (Tr. at 25.) Fischer explained that defendant had nothing to worry about; the officers were going in to get the kids

---

[1] At the hearing, counsel referred to Johnson as defendant's wife, but she testified that they are not formally married.

out, as Johnson asked, and to look for the shooter, and Fischer knew defendant was not the shooter. Another officer, who was standing on the porch, asked if the police had consent to enter, and Fischer said yes. Fischer looked back at defendant and Johnson, and neither protested. The entry occurred about 35-40 minutes after the shooting.

Officers conducted a sweep of the house, observing drugs and a firearm in plain view. After they brought the children out, the officers obtained a search warrant based on their observations inside the house.

At the evidentiary hearing before the magistrate judge, Johnson denied consenting. She testified that after she went outside the house the police refused to allow her to re-enter because they believed a gunman had run inside. She assured the officer that there was no one inside the house but her kids. She objected to the officers going in to get the kids out because the kids had never seen police officers before and would be startled. Advised that she could either grant permission or the police could get a search warrant, Johnson testified that she told the officer to get a warrant. The magistrate judge disbelieved her. The magistrate judge also found the initial entry supported by exigent circumstances.

## II. DISCUSSION

The Fourth Amendment generally requires police to obtain a warrant before entering someone's home. This case involves two exceptions to the warrant requirement – consent and exigent circumstances.

**A.    Consent**

A voluntary consent "lifts" the warrant requirement. United States v. Stribling, 94 F.3d 321, 324 (7th Cir. 1996). The government bears the burden of proving by a preponderance of

3

the evidence that consent was given. See, e.g., United States v. Beltran, 752 F.3d 671, 679 (7th Cir. 2014). To determine whether consent was given in this case, I must weigh the credibility of the government's witnesses (Detective Fischer, Officer Michael Wawrzyniakowski, and Sgt. Daniel Wesolowski) against the defense witnesses (Johnson and Reel). I agree with the magistrate judge that the government's witnesses were more credible.

Detective Fischer and Officer Wawrzyniakowski both clearly testified that Johnson gave verbal consent to enter. (Tr. at 22, 81, 120.) That she would so do makes sense given the situation – a recent shooting, a gunman on the loose, and three children alone in the house. Johnson testified that no one else was inside, but as she admitted on cross examination someone could have entered the lower unit of the duplex without her knowledge. (Tr. at 212.) Johnson also expressed concern that the police would have frightened her children, but on cross-examination she did not claim to have asked officers if she could go in with them to reassure the children. (Tr. at 189.)

Reel and Johnson failed to corroborate each other.[2] Reel claimed that, during the time he was outside the residence and an officer was speaking to him and Johnson, he "never" heard an officer ask Johnson for consent to enter. (Tr. at 234-35.) This is contrary to the testimony of Fischer, Wawrzyniakowski, and Johnson, all of whom testified that the police asked Johnson for consent to enter the house. Reel later testified that, after defendant was arrested, he heard an officer discussing wanting to enter Johnson's residence, and he heard her say "not without a search warrant." (Tr. at 236.) As the magistrate judge recognized, it is unclear whether this referred to the officers' initial entry or to a later request after the

---

[2]Reel's credibility is also undermined by his admitted lies to the police on the scene.

contraband had been found. Reel further testified that he and Johnson spoke to an Asian or Caucasian officer (Tr. at 232), contrary to Johnson's testimony that she only spoke to an African-American officer about the police getting into the house (Tr. at 166, 170). Sgt. Wesolowski, the leader of the tactical team, did not hear Johnson consent but he did see Johnson speaking to Fischer and Wawrzyniakowski, corroborating their testimony and undercutting Johnson's.

Finally, as the magistrate judge recognized, Johnson has a stronger interest in the outcome of this matter than the officers. While the police would not want the court to find them guilty of a Fourth Amendment violation, Johnson would not want the father of her children to be convicted and incarcerated.

In his objections, defendant notes that the police never obtained Johnson's written consent, but Fischer explained that when the officer he sent to fetch a consent form failed to promptly return he decided to act based on Johnson's verbal requests and the exigencies of the situation. Defendant faults the officers for failing to memorialize the consent in any formal way, but Fischer testified that the department frowns on ad hoc consents recorded in an officer's memo book. (Tr. at 63.) In any event, written consent is not constitutionally required, and Fischer provided a reasonable explanation for his failure to obtain a writing here. See United States v. Dean, 550 F.3d 626, 631 (7th Cir. 2008).

Defendant also contends that the government failed to submit corroborating evidence that Johnson gave Fischer verbal consent to enter, but that is incorrect. Wawrzyniakowski testified that Johnson stated, "my babies are upstairs," and that she gave consent for the officers to go in to get her children out of the house. (Tr. at 81.) Wesolowski saw Johnson speaking to Fischer and Wawrzyniakowski.

5

Finally, defendant notes that Fischer failed to mention Johnson's consent in his report, but I cannot conclude that this undermines his credibility given the corroboration provide by Wawrzyniakowski and the other circumstances of the encounter discussed above. Defendant contends that the magistrate judge could only speculate that Johnson would consent because of those circumstances, but it was entirely reasonable for the magistrate judge to conclude that a parent would likely agree to the police acting to protect her children. For these reasons and those stated by the magistrate judge, I find that the government has shown by a preponderance of the evidence that Johnson consented to the entry.

**B.    Exigent Circumstances**

Exigent circumstances arise when there is a compelling need to act and no time to secure a warrant. United States v. Rivera, 825 F.2d 152, 156 (7th Cir. 1987). Exigent circumstances may exist, for example, when there is a need to protect the occupant of a home from harm. United States v. Ross, 741 F.3d 743, 748 (7th Cir. 2013). For this exception to apply, the government must establish that the circumstances as they appeared at the moment of entry would lead a reasonable, experienced law enforcement officer to believe that someone inside the house required immediate assistance. United States v. Richardson, 208 F.3d 626, 629 (7th Cir. 2000). While the concern must be objectively serious, the police need not stand outside, despite legitimate concerns about the welfare of the occupant, unless they can hear screams from inside. United States v. Brown, 64 F.3d 1083, 1086 (7th Cir. 1995).

I agree with the magistrate judge that exigent circumstances supported the officers' entry in this case. The officers encountered a chaotic situation, with escalating tensions. They received reports of additional shots being fired in the vicinity, and neighbors continued to come forward to implicate defendant and Reel. (Tr. at 31-32, 37, 82, 124-25, 137.) While Fischer

6

knew that defendant and Reel did not shoot the victim themselves, given what he had seen on the video and defendant and Reel's dissembling responses when questioned, Fischer suspected that they may have set the victim up to be shot; he further concluded that they were obstructing the investigation into the shooting and may have been harboring the shooter inside the residence. While the video showed the shooter proceeding in a different direction than defendant and Reel, the shooter's path led to an alley which in turn led to defendant's residence. (Tr. at 53, 70.) Factor in Johnson's repeated, urgent references to "her babies" being inside the house (e.g., Tr. at 119-20, 130-31, 134, 137), and the police confronted an exigency sufficient to warrant their entry into and protective sweep of the house. See Brown, 64 F.3d at 1086-87 (noting that even a mild exigency may suffice to justify a quick inspection to ensure occupant safety).[3]

In his objections, defendant notes that Fischer received no specific information that a third individual (besides defendant and Reel) had entered the house, and the officers outside the house noticed no commotion inside. However, Fischer knew that the shooter could have reached the house through the alley, and at the time of the entry he had legitimate concerns that the shooter was affiliated with defendant and/or Reel. Defendant contends that only speculation supports that notion that he and Reel were the shooter's accomplices. However, Fischer had a reasonable basis for suspicion based on the video and, more importantly, defendant and Reel's admitted lies to the police when questioned at the residence. That the police later learned that defendant and Reel had no connection to the shooter is irrelevant to their actions at the time. Fischer also reasonably testified that the apparent calm inside the

---

[3]There is no indication that the officers exceeded the scope of a protective sweep during their initial entry in observing the contraband inside the house.

7

house caused him to fear that someone inside was making sure the children would not make noise (Tr. at 67), and the closed blinds prevented officers from seeing inside (Tr. at 68). Fischer further testified that the fact that the children did not come to the window to peak out at all the police officers in front of the house also caused him more concern. (Tr. at 68-69.)

As the Seventh Circuit has acknowledged, a police "officer on the beat must be allowed latitude to make snap judgments, subject to the requirement of reasonableness." Brown, 64 F.3d at 1086. Perhaps the officers overreacted here, but given the situation confronting them, I agree with the magistrate judge that their decision to take a brief look inside the house to make sure the children were safe and the shooter was not inside was a reasonable one, carried out reasonably. Id. at 1086-87.

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that the magistrate judge's recommendation (R. 23) is adopted, and defendant's motion to suppress (R. 13) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 18th day of May, 2015.

/s Lynn Adelman
LYNN ADELMAN
District Judge